UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL DANFORTH,

            Plaintiff,           Case No. 12-10159
                                   Honorable Bernard A. Friedman
v.                                        Magistrate Judge David R. Grand

PRISON HEALTH SERVICES, SANDRA
MANSSUR, KELLY SCHUITMAN,
NANCY MCGUIRE, RICK COLEMAN,
M.D.O.C. BUREAU OF HEALTH CARE
SERVICES, and JEFFREY STIEVE,

            Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT
### THE MDOC DEFENDANTS' MOTION TO DISMISS [15]

Before the court is the Motion to Dismiss, or in the Alternative, for Summary Judgment, filed by the Michigan Department of Corrections Bureau of Health Care Services and Dr. Jeffrey Stieve (collectively the "MDOC Defendants") on September 20, 2012. (Doc. #15). Plaintiff filed a response to this motion on November 5, 2012. (Doc. #31). An Order of Reference was entered on March 2, 2012, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #7).

Generally, the court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* L.R. 7.1(f). Here, the court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

**I.    RECOMMENDATION**

For the reasons set forth below, **IT IS RECOMMENDED** that the MDOC Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment [15] be **GRANTED**.

## II.     REPORT

### A.     Background

*Pro se* Plaintiff Michael Danforth ("Danforth") is a State of Michigan prisoner who is confined at the Thumb Correctional Facility in Lapeer, Michigan. (Doc. #1 at ¶3). Danforth brings this civil rights action pursuant to 42 U.S.C. §1983 against Prison Health Services, Inc. ("PHS"), the MDOC Bureau of Health Care Services ("BHCS"), Dr. Jeffrey Stieve, and various medical care providers.[1] Danforth claims that Dr. Stieve is the Chief Medical Officer for the MDOC and its BHCS, (*Id.* at ¶¶9, 24).

The general subject matter of Danforth's Complaint and its two-page "Attachment to Statement of Facts" is the alleged skin cancer on his face which he claims has not been properly treated. According to Danforth, he had a basal cell carcinoma surgically removed from his face on December 20, 2009, which has now returned. (Doc. #1 at ¶14, Attachment at ¶1). His request for specialty medical care from a dermatologist has been denied, and he recites a litany of allegations against PHS, Manssur, Schuitman, McGuire, and Coleman (collectively the "PHS Defendants") related to their professional qualifications and alleged failure to properly treat his condition. (Doc. #1 at ¶¶16-19). With respect to the BHCS, however, Danforth makes <u>no</u> allegations. And, as to Dr. Stieve, Danforth alleges only that Dr. Stieve denied an unspecified Step III grievance appeal he had filed, and that, generally speaking, Dr. Stieve failed "to carry out his oversight responsibilities by making adequate care available." (*Id.* at ¶¶9, 25).

Danforth alleges that the defendants' actions violated his Eighth Amendment right to be

---

[1] Also named as defendants in this action are Prison Health Services and four of its employees, Sandra Manssur, Kelly Schuitman, Nancy McGuire, and Rick Coleman. At present, service has not been effectuated on Defendants Manssur or Schuitman. Defendants PHS, McGuire, and Coleman have also filed a motion to dismiss (Doc. #26), which will be addressed in a separate Report and Recommendation.

free from cruel and unusual punishment. (Doc. #1). Danforth sues all defendants in their personal and official capacities, seeking $1.75 million in compensatory damages for physical injury; $300,000 in compensatory damages for mental and emotional injuries; $200,000 in punitive damages; as well as declaratory relief and unspecified injunctive relief. (*Id.* at 6-7).

On September 20, 2012, the MDOC Defendants filed the instant Motion to Dismiss, or in the Alternative, for Summary Judgment. (Doc. #15). Danforth filed a response[2] on November 5, 2012 (Doc. #31), and the motion is now ready for a report and recommendation.

     **B.**     **Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

---

[2] In his response, Danforth concedes that the BHCS is not a proper defendant and should be dismissed. (Doc. #31 at 6). Accordingly, the court recommends dismissing Danforth's complaint as to the BHCS, and it need not address the MDOC Defendants' argument that claims against that entity are barred by the Eleventh Amendment.

3

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pursuant to Federal Rule of Civil Procedure 56, the court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving

party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C.   Analysis

In their motion, the MDOC Defendants argue that Danforth's claims against Dr. Stieve fail for three reasons:  first, Danforth's allegations against Dr. Stieve do not establish the requisite level of personal involvement necessary for liability under §1983; second, Danforth did not properly exhaust his administrative remedies as against Dr. Stieve; and, third, Dr. Stieve is shielded by qualified immunity. (Doc. #15). The court addresses each argument in turn.

#### *1.   Danforth's Claims Against Dr. Stieve Should Be Dismissed Because He Has Not Alleged the Requisite Level of Personal Involvement*

Dr. Stieve first argues that Danforth fails to state a claim against him under §1983 because he has "not made any factual allegations showing Dr. Stieve's personal involvement in the complained-of acts, and merely states that Dr. Stieve did not rectify the particular situation when brought to his attention." (Doc. #15 at 11).

In order to demonstrate liability under §1983, a plaintiff must first establish that each named defendant acted under color of state law and that his or her actions violated rights secured by the Constitution and/or laws of the United States. *See Baker v. McCollan*, 443 U.S. 137 (1989). The plaintiff also must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *See Rizzo v. Goode*, 423 U.S. 362,

5

377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Moreover, §1983 liability cannot be premised upon mere allegations of *respondeat superior*; rather, in order for a party to be held liable under §1983, there must be a showing that the party personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Bellamy*, 729 F.2d at 421. A supervisory official's awareness of a complaint of allegedly illegal conduct, and his subsequent failure to take corrective action, is insufficient to trigger §1983 liability. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Furthermore, participating in the grievance process, or even signing a grievance response, is insufficient to show personal involvement. *See Shehee v. Luttreell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lee v. Michigan Parole Board*, 104 F. App'x 490, 493 (6th Cir. 2003). Rather, liability under §1983 must be based upon active unconstitutional behavior, not a "mere failure to act." *Shehee*, 199 F.3d at 300.

In this case, the only allegations Danforth makes as to Dr. Stieve are (1) that he denied Danforth's Step III grievance appeal; (2) that, generally speaking, Dr. Stieve failed "to carry out his oversight responsibilities by making adequate care available"; and (3) that "[d]ue to the undertaking of [the MDOC's] contract with [PHS], MDOC's Chief Medical Officer, [Dr. Stieve,] has consented to [PHS'] utilization review mechanism used for approval of specialty consultation."[3] (*Id.* at ¶¶9, 24-25). None of these allegations establish the requisite level of "personal involvement" required to impose §1983 liability against Dr. Stieve.

First, Dr. Stieve's denial of Danforth's Step III grievance appeal does not amount to

---

[3] In his response to the MDOC Defendants' motion, Danforth also vaguely asserts that "the contract instrument" (evidently the MDOC's contract with PHS) "forms the basis of personal involvement with Dr. Stieve," and that Dr. Stieve is personally liable because of "a permanent and well settled custom of laxness and inaction." (Doc. #31 at 11-12). Such assertions, even if true, are insufficient to trigger §1983 liability for the reasons discussed below.

actionable "personal involvement." *Shehee*, 199 F.3d at 300; *Lee* 104 Fed. Appx. at 493 ("Moreover, Lee may not base his claim against the individual defendants upon their denial of his administrative grievances. Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.") (citing *Shehee*, 199 F.3d at 300).

Second, Danforth's claim that Dr. Stieve failed "to carry out his oversight responsibilities by making adequate care available" is a classic attempt to improperly impose *respondeat superior* liability on an individual who did not himself directly participate in the alleged improper care. *Shehee*, 199 F.3d at 300 (holding that "§1983 liability must be based on more than respondeat superior, **or the right to control employees**.") (emphasis added) (citing *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.1982)).[4]

Finally, the mere fact that Dr. Stieve executed, on behalf of the MDOC, its contract with PHS, cannot make him liable to Danforth. This claim is similar to one that Dr. Stieve failed to adequately "supervise, control or train" the staff assigned to provide the actual services at issue. However, under settled Sixth Circuit law, Dr. Stieve could only be liable on such a claim if he "either encouraged ***the specific incident of misconduct or*** in some other way ***directly participated in it***." *Hays*, 668 F.2d at 874 (emphasis added). Here, the "specific incident of misconduct" is that those medical professionals who actually saw Danforth allegedly failed to provide him with adequate medical treatment. (Doc. #1 at ¶¶16-19). Danforth makes no

---

[4] In opposition to the MDOC Defendants' motion, Danforth cites *Cobbs v. Pramstaller*, 475 F. App'x 575 (6th Cir. 2012), as support for the proposition that "Dr. Stieve had ultimate authority to approve needed specialty care." (Doc. #31 at 12). *Cobbs* does not support that proposition, however. In *Cobbs*, the defendant chief medical officer did, in fact, sit on the committee that made the decision to deny the plaintiff's requested medical care. Here, in contrast, Danforth does not allege that Dr. Stieve played any role in the decision to deny his request for specialized care; rather, he merely asserts that Dr. Stieve denied the grievance he filed challenging the decision of others on this issue. Thus, *Cobbs* is inapposite.

allegation that Dr. Stieve knew of Danforth's particular medical needs when he signed the PHS contract on the MDOC's behalf, or that he knew Danforth, as a result of that contract, would necessarily receive inadequate medical treatment. Accordingly, Danforth has not alleged the requisite "personal involvement" by Dr. Stieve in "the specific incident of misconduct," and Dr. Stieve cannot be liable to him under §1983.[5]

### 2. *Danforth Has Failed to Exhaust His §1983 Claim Against Dr. Stieve*

Dr. Stieve also argues that Danforth's Complaint should be dismissed because Danforth failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a). (Doc. #15 at 5-9).

Under the PLRA, a prisoner may not bring an action, "under [§1983] or any other Federal law," to challenge his or her conditions of confinement until all available administrative

---

[5] Danforth cites *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) for the proposition that "active participation in the unconstitutional conduct or encouragement or condonement of the specific incident of misconduct can create supervisory liability." However, that case does not help him here. In *Birrell*, the plaintiff inmate sued the MDOC's director (Mr. Brown) and the superintendent of the prison where he was housed (Mr. Baylor), alleging that the prison's living conditions were "so offensive that they violate the eighth amendment prohibition against cruel and unusual punishment." *Id.* at 957. Birrell claimed that one root of the problem was "inadequate staffing," for which he apparently blamed Brown and Baylor. *Id.* The Sixth Circuit explained that it would "not discuss the eighth amendment aspects of this case" because Brown and Baylor were immune from Birrell's suit. The Sixth Circuit explained that: "It is hard to see how Baylor could be responsible for this alleged deficiency unless he refused staff or failed to request sufficient staff *knowing of serious understaffing that would bring about violation of a known constitutional right*. Brown, on the other hand, might somehow be directly responsible for the alleged understaffing, but only if he was not hampered by budgetary constraints. Birrell alleges particular shortcomings and deficiencies, but provides no support for the proposition that these deficiencies are due to deliberate indifference on the part of either Baylor or Brown." *Id.* at 959. Similarly, here, as the court just explained, Danforth makes no allegation that Dr. Stieve knew of Danforth's specific medical condition when he executed the contract with PHS. Accordingly, his signing that contract cannot be a basis for Danforth's deliberate indifference claim. *Id.* Moreover, Danforth admits that, as a result of the contract in question, he was seen by a nurse practitioner, a physician's assistant, and two medical doctors. Without commenting on the actual care provided, the fact that such medical attention was available to examine Danforth's readily visible skin condition belies his claim that Dr. Stieve's execution of the PHS contract demonstrated a "deliberate indifference" to Danforth's serious medical needs.

8

remedies have been exhausted. 42 U.S.C. §1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is as an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Block*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 Fed. Appx. 885, 888 (6th Cir. 2009).

In determining whether the plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130 ("Prisoner/Parolee Grievances"). (Doc. #15 at Ex. A (the "Policy," effective July 9, 2007)). State prisoners must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process – before the challenged conduct can be brought as a lawsuit. (*Id.* at ¶B). If a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id.* at ¶¶P, V). "Information provided [in the Step I grievance] shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). **Dates, times, places, and names of all those involved in the issue being grieved are to be included**." (*Id.* at ¶R) (emphasis added). If the prisoner is dissatisfied with the Step I response, he may submit a Grievance Appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if

9

no timely response is received, within ten days of the date the response was due. (*Id*. at ¶BB). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶FF).

The parties appear to agree that Danforth has filed four Step III grievance appeals.[6] Two of these grievances (TCF-12-02-0928-28a and TCF 11-05-0322-16z) are not relevant to the instant motion.[7] Thus, at issue are the two remaining grievances: TCF-10-09-4352-12d and TCF-11-08-0543-12d.

In Grievance No. TCF-10-09-4352-12d, filed at Step I on September 23, 2010, Danforth complained that, after he discovered "bumps" near the previous cite of his basal cell carcinoma, Defendants Manssur and Schuitman examined him and informed him that no testing or treatment was necessary. (Doc. #31 at Ex. H). Nowhere in this Step I grievance does Danforth name Dr. Stieve, despite the fact that the names of all those individuals involved in the issue being grieved were required to be included. (Doc. #15 at Ex. A, ¶R).

In Grievance No. TCF-11-08-0543-12d, filed at Step I on August 2, 2011, Danforth complained that although Dr. McGuire initially responded positively to his request for an off-site dermatology consultation, Dr. Coleman later informed him that this request was denied. (Doc. #31 at Ex. I). Again, Dr. Stieve is not named in Danforth's Step I grievance, despite the fact that the Policy requires that the names of all individuals involved in the issue being grieved be

---

[6] Although the MDOC Defendants indicate in their motion that Danforth has filed five Step III appeals (Doc. #15 at 15), a review of the evidence submitted indicates that two of the grievances to which the MDOC Defendants refer appear to be duplicates (*Id.* at Ex. B). Moreover, both Danforth and the MDOC Defendants discuss only four grievances in their pleadings.

[7] Danforth acknowledges in his response to the MDOC Defendants' motion that he submitted his Step III appeal of Grievance No. 12-02-0928-28a on April 1, 2012 (Doc. #31 Ex. A, ¶29), which is <u>after</u> he filed his lawsuit on January 13, 2012. Because Danforth did not complete the MDOC's grievance process prior to filing this litigation, this grievance does not exhaust any of the allegations in Danforth's Complaint. *See Woodford*, 548 U.S. at 94-95. Danforth concedes in his response that Grievance No. 11-05-0322-16z is "immaterial." (Doc. #31 at 17).

included.  (Doc. #15 at Ex. A, ¶R).  In submitting his Step II appeal of this grievance, Danforth did include a vague allegation that apparently pertains to Dr. Stieve, saying:

> In addition, BHCS personnel Laura Kinder R.N., and Jeffrey Stieve CMD, have knowledge that contractor, because of limited knowledge and experience with skin issues, are practicing outside the scope of their licenses.  Government employees are also aware that contractor will not provide adequate medical care in this particular situation.

(Doc. #31 at Ex. I).  This allegation, however, is insufficient, as the Policy clearly requires Danforth to name "all those involved in the issue being grieved" in the Step I grievance.  (Doc. #15 at Ex. A, ¶R).  Thus, neither of the grievances that Danforth pursued to Step III – which failed to name Dr. Stieve at Step I – serve to exhaust Danforth's claims against Dr. Stieve.  *See, e.g., Sullivan v. Caruso*, 2008 WL 356878, at *11 (W.D. Mich. Feb. 7, 2008) (plaintiff did not properly exhaust his administrative remedies where he failed to name defendant in Step I grievance).

As set forth above, Danforth was required to properly complete the MDOC's three-step grievance process in order to fully exhaust his administrative remedies.  Here, where the undisputed evidence establishes that Danforth has not done so with respect to Dr. Stieve, his claims against Dr. Stieve should be dismissed.  *Sullivan*, 2008 WL 356878, at *11

### 3. *Danforth's Claims Against Dr. Stieve Also Are Barred by the Doctrine of Qualified Immunity*

Dr. Stieve also argues that because his actions were objectively reasonable under the circumstances, and because he did not violate Danforth's clearly established constitutional rights, Danforth's claims are barred by the doctrine of qualified immunity.  (Doc. #15 at 17-19).

Under the doctrine of qualified immunity, governmental officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established constitutional right.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified

11

immunity is premised upon the avoidance of unnecessary burdens of litigation, and therefore the privilege is an immunity from suit and not a mere defense to liability. *See Saucier v. Katz*, 533 U.S. 194, 200 (2001). Determining the applicability of qualified immunity requires a two-step inquiry into whether the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *See Saucier*, 533 U.S. at 201. In conducting this inquiry, the court is "permitted to exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Bishop v. Hackel*, 636 F.3d 757, 772 (6th Cir. 2011).

In this case, for all of the reasons discussed above, Danforth has not established that Dr. Stieve violated a clearly established constitutional right and, thus, cannot satisfy either prong of the qualified immunity standard. For this reason too, Danforth's claims for monetary damages against Dr. Stieve should be dismissed.

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the MDOC Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment [15] be **GRANTED**.

Dated: January 29, 2013         s/David R. Grand
Ann Arbor, Michigan             DAVID R. GRAND
                                United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and

recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 29, 2013.

s/Felicia M. Moses
FELICIA M. MOSES
Case Manager
